# Exhibit "A"

SUPREME COURT OF VICTORIA

COURT OF APPEAL

S APCI 2016 0080

LEGEND INTERNATIONAL HOLDINGS                          Appellant
INC (ARBN 120 855 352) (IN
LIQUIDATION)

v

INDIAN FARMERS FERTILISER                              Respondents
COOPERATIVE LIMITED & KISAN
INTERNATIONAL TRADING FZE

—

| | |
|---|---|
| JUDGES: | Whelan, Beach and Ferguson JJA |
| WHERE HELD: | MELBOURNE |
| DATE OF HEARING: | 24 June 2016 |
| DATE OF JUDGMENT: | 30 June 2016 |
| MEDIUM NEUTRAL CITATION: | [2016] VSCA 151 |
| JUDGMENT APPEALED FROM: | Legend International Holdings Inc (as debtor in-possession of the assets of Legend International Holdings Inc) v Legend International Holdings Inc [2016] VSC 308 (Associate Justice Randall) |

—

CORPORATIONS – Winding up – Appellant foreign company – Respondents applied to wind up Appellant in Australia - Appellant filed petition for voluntary bankruptcy in United States under Chapter 11 of United States Code after application made for winding up – Supreme Court of Victoria found main centre of Appellant's interests was in Australia – Court refused application to recognise Chapter 11 proceeding under the Model Law (given force in Australia by the *Cross-Border Insolvency Act 2008*) - Pre-requisites for recognition as foreign main or non-main proceeding not satisfied – Issue whether requirement in s 581 *Corporations Act 2001* to act in aid of and be auxiliary to foreign court obliged Court to refuse to wind up Appellant – Section 581 requires Court to consider what aid it should properly give – Aid here involved exercise of discretion under s 583 *Corporations Act* as to whether to wind up Appellant – Court to weigh up relevant matters to determine whether winding up order should be made when Chapter 11 proceeding on foot - No error identified – Appeal dismissed - *Corporations Act 2001* ss 581(2), 583; *Cross-Border Insolvency Act 2008*; Model Law; *Hughes & Others v Hannover Ruckversicherungs-Aktiengesellschaft* [1997] BCC 921 considered

—

| APPEARANCES: | Counsel | Solicitors |
|---|---|---|
| For the Appellant | Mr J P Moore QC with Mr P S Noonan | Mr B Waterson, Waterson Legal |

| | | |
|---|---|---|
| For the Respondents | Mr P D Crutchfield QC with Dr O Bigos | Mr M Sloan, Ashurst Australia |

THE COURT:

*Introduction*

1          By order made in the trial division, a registered foreign company, Legend
International Holdings Inc, was wound up under s 583 of the *Corporations Act 2001*.
Before the winding up order was made (but after the application for it had been
filed) Legend filed a voluntary bankruptcy petition in the United States of America
under Title 11 of the United States Code ('Chapter 11'). The issue is whether the
winding up order could be made when the Chapter 11 proceeding was on foot.

2          Legend argues that the Court was obliged to refrain from making the winding
up order because s 581(2) of the *Corporations Act* requires the Court to 'act in aid of,
and be auxiliary to' the United States Bankruptcy Court. In essence, Legend
contends that there are inherent conflicting differences between a winding up in
Australia and a proceeding under Chapter 11 — winding up is aimed at realisation
and distribution of the corporation's assets whereas Chapter 11 is focussed on the
continuation of the corporation. Consequently, Legend argued, the making of the
winding up order did not act in aid of the United States Bankruptcy Court but
instead hindered it and hindered the smooth operation of the Chapter 11 proceeding.

3          For the reasons which follow, we do not accept that s 581(2) obliged the Court
to refrain from making the winding up order. Properly construed, s 581(2) required
the Court to consider what aid it should properly give. In this case, the aid that
Legend says should have been given involved the exercise of a discretion under s 583
as to whether to wind it up. The effect of Legend's submissions was that the
discretion could only be exercised in one way because it had filed for bankruptcy
under Chapter 11; that is, that the Associate Judge should have refused to make the
winding up order. Section 581(2) does not mandate that outcome. In each case, it
will be a matter for the Court to weigh up relevant matters to determine whether in
the particular case a winding up order should be made when a Chapter 11
proceeding is on foot. In the present case, the Associate Judge did not make any

error of the kind that would vitiate the winding up order made in respect of Legend.

*Preliminary matters - Approval to exercise a function or power as a director and the need for leave to appeal*

4        Joseph Gutnick is a director of Legend. He seeks the Court's approval to bring an appeal in the name of Legend against the winding up order. The Court's approval is required under s 471A of the *Corporations Act 2001*.[1] Among other things, that section prevents a director from causing a company to file an application for leave to appeal and any appeal against a winding up order without first having obtained either the liquidator's written consent or the leave of the Court.[2] Legend's liquidators have refused to give their consent to Mr Gutnick.

5        The application under s 471A,[3] together with the application for leave to appeal (if leave is necessary) and any appeal were listed for hearing together.[4] Mr Gutnick stated that he would fund the costs of the application for leave to appeal, the appeal itself and the application under s 471A and would not seek to recover

---

[1]    Section 471A provides:

    (1)    While a company is being wound up in insolvency or by the Court, a person cannot perform or exercise, and must not purport to perform or exercise, a function or power as an officer of the company.

    (1A)    Subsection (1) does not apply to the extent that the performance or exercise, or purported performance or exercise, is:

        (a)    as a liquidator appointed for the purposes of the winding up; or

        (b)    as an administrator appointed for the purposes of an administration of the company beginning after the winding up order was made; or

        (c)    with the liquidator's written approval; or

        (d)    with the approval of the Court.

[2]    *Rock Bottom Fashion Market Pty Ltd v. HR & CE Griffiths Pty Ltd* [2000] 2 Qd R 573, *HVAC Constructions (Qld) Pty Ltd v. Energy Equipment Engineering Pty Ltd* [2002] FCA 1638 and *Rodgers v CJS Panels Pty Ltd* [2001] VSC 470.

[3]    In paragraph 1 of the application under s 471A (Originating Process dated 16 June 2016 in Supreme Court proceeding 2314 of 2016), Mr Gutnick sought leave to pursue the appeal and a stay pending the appeal. In paragraph 2 of the application, he sought leave to participate in the US proceeding. So far as the relief sought in paragraph 2 is concerned, this Court will refer that matter for hearing and determination in the trial division.

[4]    Mr Gutnick was granted limited approval to enable him to file the necessary materials in this Court for the application for leave to appeal and any appeal and to participate in the hearing.

those costs from the assets of Legend, unless the appeal were successful. In our view, the prospects of the appeal were sufficiently strong, and raised novel matters, which justified Mr Gutnick having leave to cause Legend to bring the appeal given that he will bear the costs, thus protecting Legend's assets from dissipation.

6    There was also a preliminary issue as to whether Legend had an automatic right to appeal the winding up order or whether it required leave to do so. The question arose because the order made by an Associate Judge attracted an automatic right of appeal to the trial division.[5] The appeal was not heard in the trial division but was referred to this Court for determination. In almost all civil cases, an appeal to this Court requires leave.[6] This Court may grant leave if it is satisfied that the appeal has a real prospect of success.[7] We are satisfied that the appeal had a real prospect of success in the sense that it is not fanciful.[8] Consequently, if leave is required, it should be granted.

*Additional facts*

7    Legend is a United States corporation registered in Delaware in the United States of America. Its principal assets are shares in a company that holds phosphate assets in Queensland. Its principal place of business is in Melbourne.

8    The respondents owned shares in Legend. They applied for the winding up of Legend.[9]

9    The background to the winding up application was that in May 2015 the respondents obtained an arbitral award in Singapore against Legend entitling them to rescind the purchase of their shares and requiring Legend to pay US$12.35 million plus interest. We were informed that there has been no challenge to the award.

---

[5]    *Supreme Court (Corporations) Rules 2013* (Vic) r 16.5(1).

[6]    *Supreme Court Act 1986* (Vic) s 14A.

[7]    Ibid s 14C.

[8]    *Kennedy v Shire of Campaspe* [2015] VSCA 47, [12].

[9]    Under s 583 of the *Corporations Act,* which applies to registered foreign companies.

10          The respondents obtained judgment for the enforcement of the arbitral award
in Australia. Although there is an extant application for special leave to the High
Court, the stay on the enforcement of the award expired on 12 February 2016. The
respondents filed the winding up application on 11 April 2016.

11          On 8 May 2016, Legend filed its bankruptcy petition in the USA under
Chapter 11 ('US Proceeding').

12          On 10 May 2016, Legend filed an application in the Court seeking recognition
of the US Proceeding under the *Cross-Border Insolvency Act 2008* and the Model Law
to which that Act gives force in Australia.[10] That application was unsuccessful. The
Associate Judge found that the US Proceeding was not a foreign main proceeding
under the Model Law because Legend's centre of main interests was in Australia
(not in the USA)[11] and was not a foreign non-main proceeding under the Model Law
because Legend does not have an establishment in the USA (within the meaning of
the Model Law).[12] No appeal is brought in respect of those findings. The Model
Law recognition application was heard at the same time as the winding up
application.

13          There have been a number of conferences in the US Proceeding before Judge
Shannon of the United States Bankruptcy Court. In those conferences, mention has
been made of the possibility that the winding up proceeding may have been a breach
of the stay on proceedings that applies when a Chapter 11 proceeding is on foot and
that the respondents may apply to adjourn or stay the US Proceeding. At the last
status conference Judge Shannon determined to await the outcome of this appeal
before scheduling a further status conference.

14          Among the differences between the Australian winding up regime and that
which applies under Chapter 11 is the treatment of creditors. In particular, under

---

[10]     *Cross-Border Insolvency Act 2008* s 6.

[11]     Model Law arts 2, 17 (2) (a).

[12]     Ibid arts 2, 17(2)(b).

s 516(b) of the United States Code, claims arising from the rescission of share purchases are subordinated to ordinary unsecured creditors. Whilst that is similar to the treatment that such creditors receive under the current s 563A of the *Corporations Act*, Legend suggests that the respondents purchased their shares before the current form of that provision took effect and this may lead to different treatment in respect of the same debt.

*Legislation and principles*

15      So for as relevant, s 581 provides:

**Courts to act in aid of each other**

. . . .

(2)     In all external administration matters, the Court

(a)     must act in aid of, and be auxiliary to, the courts of: . . .

(iii)    prescribed countries;

that have jurisdiction in external administration matters; . . .

(3)     Where a letter of request from . . . a country other than Australia, requesting aid in an external administration matter is filed in the Court, the Court may exercise such powers with respect to the matter as it could exercise if the matter had arisen in its own jurisdiction.

16      The USA is a prescribed country.[13] 'External administration matter' is defined to include a matter relating to the insolvency of a body corporate or of a Part 5.7 body. There is no dispute that Legend is both a body corporate and a Part 5.7 body and that the US Proceeding relates to its insolvency.

17      In *Hughes & Others v Hannover Ruckversicherungs-Aktiengelsellschaft*,[14] ('*Hughes v Hannover Re*') the English Court of Appeal considered the effect of s 426 of the *Insolvency Act 1986* (UK). So far as relevant, that section provided:

(4)     The courts having jurisdiction in relation to insolvency law in any part of the United Kingdom shall assist the courts having the

---

13      *Corporations Regulations* 2001 r 5.6.74(i).

14      [1997] BCC 921.

> corresponding jurisdiction in any other part of the United Kingdom or
> any relevant country or territory.

> (5)    For the purposes of subsection (4) a request made to a court in any
> part of the United Kingdom by a court in any other part of the United
> Kingdom or in a relevant country or territory is authority for the court
> to which the request is made to apply, in relation to any matters
> specified in the request, the insolvency law which is applicable by
> either court in relation to comparable matters falling within its
> jurisdiction.
>
> In exercising its discretion under this subsection, a court shall have
> regard in particular to the rules of private international law.

18        In that case, provisional liquidators were appointed to a Bermudan company that did not carry on business in the United Kingdom. One of its reinsurers, Hannover Re, had a place of business in London but none in Bermuda. There were contracts of re-insurance between the Bermudan company and Hannover Re. The re-insurance had been effected through brokers in London and was accepted by Hannover Re through its office in Germany. The contracts of re-insurance contained an arbitration clause with any arbitration to be governed by Massachusetts law. After the provisional liquidators were appointed to the Bermudan company, Hannover Re demanded arbitration under the re-insurance contracts. By letter, the Supreme Court of Bermuda requested the High Court of Justice in England pursuant to the provisions of s 426 of the *Insolvency Act 1986* (UK) to assist it by, among other things, restraining Hannover Re from commencing any proceeding against the Bermudan company within England and in any and all jurisdictions. Morritt LJ (with whom Thorpe LJ and Roch LJ agreed) observed that s 426(5) extended the jurisdiction of the English courts and concluded that:

> [t]here is available to the court in England when asked for assistance by the
> court of a relevant country under s. 426 (a) its own general jurisdiction and
> powers and either (b) the insolvency law of England and Wales as provided
> for in the *Insolvency Act 1986*, the specified sections of the *Company Directors
> Disqualification Act 1986* and the subordinate legislation made under any of
> those provisions or (c) so much of the law of the relevant country as
> corresponds to that comprised in (b).[15]

19        Morritt LJ noted that there was nothing in either sub-s (4) or (5) that required

---

15    Ibid 937–938.

the court in England to grant the assistance sought because sub-s (4) does not refer to the request and sub-s (5) does not require assistance to be given by reference to the request.[16]  Morritt LJ then turned to consider the nature and extent of the obligation imposed by sub-s (4) and said:

> The obligation to assist is imposed on a court, not some executive agency. It would in my view require very clear words to justify a conclusion that the court in England was not intended by Parliament to perform its normal function of seeking to do justice in accordance with the law. There is no such indication. Accordingly the function of the court under s. 426 must be to consider whether in accordance with the three sources of law I earlier identified as (a), (b) and (c) the assistance may properly be granted. If it may then it should be, thereby discharging the statutory duty imposed by s. 426. But if it may not be properly granted then it should be withheld for it must be implicit in the fact that the duty is cast on a court that the duty is qualified by reference to what the court may properly do as a court. Of course if the court in England cannot do exactly what is sought then it should consider whether it can properly assist in some other way in accordance with any of the available systems of law. Thus the reasons for withholding assistance either as sought or in any other way are not limited to reasons of public policy.... Of course public policy is a reason why assistance may be impossible under (a) or (b). But it is by no means the only reason. Further public policy might prevent assistance being given under (c) if the provision of the insolvency law of the country the court of which requested the assistance were contrary to the public policy recognised by the court in England. In my view the court must consider in all cases whether the assistance sought or any other comparable assistance may be properly granted in accordance with the laws the court is authorised to apply on the hypotheses likewise permitted.
>
> In some cases the assistance sought is, in accordance with the system law (sc. (a), (b) and (c)) under which it is available, discretionary. Obviously the fact of the request for assistance is a weighty factor to be taken into account. Further the court in England may be expected, as Knox J did in this case, to accept without further investigation the views of the requesting court as to what was required for the proper conduct of the bankruptcy or winding up. But I do not think that the request can ever be conclusive as to the manner in which the discretion of the court should be exercised. It would be incompatible with the principle of the law which was being applied that the decision was one for the discretion of the court if the fact of the request was anything more than a factor, however weighty....
>
> In summary therefore I would reject the submission of counsel for the joint liquidators that the only ground on which a request for assistance may be refused is public policy or that the only discretion of the court is to decide which system of law made available under subs. (5) to apply and how, as opposed to whether, the assistance is to be rendered. But I would also reject the submission of counsel for Hannover Re that the only obligation of the court in England is to entertain the application for assistance. The assistance

---

[16]    Ibid 938.

should be given if, in accordance with the law to be applied, the relief sought may properly be granted. In cases requiring the exercise of a discretion the fact of the request is a weighty matter to be taken into account but it cannot outweigh all others.[17]

*Associate Judge's reasons*[18]

20          Having determined that s 581 of the *Corporations Act* applied in this case, the Associate Judge noted the observations of Barrett J in *Re Independent Insurance Company Ltd*[19] to the effect that while s 581(2)(a) imposes on the relevant Australian court a requirement to act which is not triggered by a letter of request, without such a letter the Australian court is not likely to know what action is, or might be thought to be, 'in aid of' or 'auxiliary to' the other court.[20]  The Associate Judge said:

> In this proceeding, the Court does not know what action is or might be thought to be in aid of or auxiliary to the US court. In order to act in aid of and be auxiliary to the US bankruptcy court, this Court would need an indication from that court of the assistance it needs.
>
> While the Court is required to act in aid of and be auxiliary to the US bankruptcy court, it is not yet clear what assistance is required by that court. The only progression of the Chapter 11 filing is to convene and hold a case conference. There has been no indication of what is proposed by Legend in the Chapter 11 proceeding.[21]

21          The Associate Judge accepted that he had a duty under s 581(2) to act in aid of the United States Bankruptcy Court in the absence of a request by it.[22]  He rejected Legend's submission that the making of a winding up order would be the antithesis of providing aid, or would be repugnant to it, as it would defeat the purpose of the US Proceeding.[23]  He did not consider that Judge Shannon or any court in the USA would find that a winding up order is repugnant in the circumstances.  He referred

---

17          Ibid 938-939.

18          *Legend International Holdings Inc (as debtor in possession of the assets of Legend International Holdings Inc) v Legend International Holdings Inc* [2016] VSC 308 ('Reasons').

19          [2005] NSWSC 587.

20          Ibid [13]–[14].

21          Reasons [139]–[140].

22          Ibid [141].

23          Ibid.

to the fact that the status conference in the US Proceeding had been scheduled so that the position in Australia could be ascertained, and he inferred that the USA bankruptcy judge had adjourned the further status conference to after the hearing of the winding up application.[24]

22          Consequently, the Associate Judge made the winding up order.

*Proposed grounds of appeal*

23          The sole proposed ground of appeal is that the Associate Judge erred in ordering that Legend be wound up in insolvency in circumstances where:

(a)     Legend, a USA corporation, was at the date of the order already subject to extant Chapter 11 insolvency proceedings;

(b)     The United States Bankruptcy Court is a court of a prescribed country with jurisdiction in an external administration matter;

(c)     accordingly s 581 applies such that the Associate Judge 'must act in aid of, and be auxiliary to,' the United States Bankruptcy Court; and

(d)     contrary to the obligations in s 581, a winding up order would (and has) conflict with and impede the United States Bankruptcy Court's conduct of the extant Chapter 11 proceeding with respect to Legend.

*Should the winding up order have been made in the face of the US Proceeding?*

24          Legend submits that properly construed, s 581(2)(a) of the *Corporations Act*, means that a winding up order cannot be made when there is a Chapter 11 proceeding pending except in very limited circumstances, such as where it is clear that the company will be placed into liquidation in the USA.[25]

25          It contended that the winding up order:

(a)     was inconsistent with the United States Bankruptcy Court continuing

---

[24]    Ibid [142].

[25]    Counsel gave the example of a situation where a plan for reorganization had been rejected and it was clear that the company was to be placed into liquidation.

to exercise powers over Legend's assets;

(b) subjects Legend's officers to the threat of imprisonment of up to 6 months for breach of s 471A of the *Corporations Act* if they co-operate with the United States Bankruptcy Court or the United States Trustee;

(c) places the United States Bankruptcy Court, directors, creditors and Legend's liquidators in a difficult and paradoxical position;

(d) has left the directors and liquidators in a position where they have competing obligations to different courts;

(e) has led to additional costs and difficulties; for example, the liquidators have made an application for directions as to whether they are justified in refusing to give approval under s 471A to the directors and officers of Legend continuing to exercise their powers.

26    Legend submits that a winding up order having those effects is the very antithesis of 'aiding' the US Proceeding. Rather, it inhibited the implementation of the usual procedures in a Chapter 11 proceeding and established a contrary and directly conflicting insolvency administration. Legend characterised Chapter 11 as roughly equivalent to voluntary administration under the *Corporations Act*. One of the objects of the voluntary administration provisions is to maximise the chances of an insolvent company continuing in existence or, if that is not possible, to achieve a better return for creditors than would result from an immediate winding up of the company.[26] Under the voluntary administration regime in this country, the Court is to adjourn the hearing of a winding up application if the company is in administration and the Court is satisfied that it is in the interests of the creditors for the company to continue under administration rather than be wound up.[27]

27    Legend highlighted the conflict between the liquidation regime and Chapter 11 that may arise concerning the respondents' position as creditors and whether their claims are subordinated to those of other creditors.

---

[26]    *Corporations Act* s 435A.

[27]    Ibid s 440A(2).

28        In support of its construction of s 581, Legend observed that there are a limited number of prescribed countries (as defined) and that those countries all have similar insolvency regimes. Legend submitted that they are all countries with which Australia has a close connection. Legend argued, that it is understandable why the government of Australia might want to give special deference to countries with both similar insolvency regimes and with which it has a close international relationship.

29        Legend submits that the winding up order should not have been made and that there is a simple and straightforward alternative. That is, the respondents could (although they have not) apply to stay or dismiss the US Proceeding if they considered that Legend's connections to Australia made that proceeding inappropriate.

30        Whilst there are differences in language between s 426 of the *Insolvency Act 1986* (UK) and s 581 of the *Corporations Act*, parts of the reasoning in *Hughes v Re Hannover* are apposite. Very clear words would be required by Parliament to justify a conclusion that an Australian court was obliged to refrain from exercising a discretionary power under the *Corporations Act* to wind up a company simply because the company had filed for bankruptcy in the USA under Chapter 11.[28] Such clear words are not found in s 581. Such an outcome would be surprising and anomalous. For one thing, it would mean that although (as here) the US Proceeding was not recognised under the Model Law, an automatic stay on the winding up application would apply under s 581, thus placing Legend in a stronger position than that it would have been in had the US Proceeding been recognised as a foreign main proceeding. In this regard, Art 20(4) of the Model Law is noteworthy. It provides a carve out from the general stay in Art 20(1) on proceedings against the company in that the general stay does not affect the right to request commencement of a proceeding under the *Corporations Act*. That includes an application to wind up the company.

---

[28]     We leave to one side whether such a construction would in any event raise Constitutional issues.

31        Properly construed, s 581(2) requires the Court to consider what aid may properly be given and how it might act in an auxiliary manner to the United States Bankruptcy Court. As we have said, the aid that Legend says should have been given involved the exercise of a discretion under s 583 as to whether to wind it up. The effect of Legend's submissions was that the discretion could only be exercised in one way because it had filed for bankruptcy under Chapter 11; that is, that the Associate Judge had to refuse to make the winding up order. Section 581(2) does not mandate that outcome. Rather, the Court was required to consider whether in all the circumstances (including the existence of the US Proceeding which involves a regime that is distinctly different to liquidation) it would be proper to provide aid, and act in an auxiliary manner, by not exercising the discretion to wind up Legend. The Associate Judge here determined that that would not be appropriate and he exercised the discretion in favour of winding up Legend.

32        Before this Court would interfere with the discretionary order that was made, it would be necessary for an error of the *House v The King*[29] type to be identified. That is, it would need to be shown that the Associate Judge made his decision based upon a wrong legal principle or made a mistake as to the facts or took into account an irrelevant matter or omitted to take into account a relevant matter when weighing the various considerations to arrive at his decision, or that the decision is so unreasonable or plainly unjust that this Court can infer a failure to properly exercise the discretion occurred.

33        No such error has been identified. Indeed, had we been exercising the discretion ourselves, we too would have made the winding up order. In this regard:

    (a)  the pre-requisites for winding up under s 583 were satisfied;

    (b)  the US Proceeding is on foot but is in its early stages. There is no proposed plan for reorganization at this stage. All that is said is that that is what Legend hopes will be achieved. The liquidation too is in its infancy. It is true that ultimately the two processes may not both be

---

[29]    (1936) 55 CLR 499, 504–5 (Dixon, Evatt and McTiernan JJ).

able to continue to their respective intended ends (reorganization on the one hand; realisation of assets and distribution to creditors on the other). Indeed, Legend contended that the range of possible outcomes for a Chapter 11 proceeding was a reason why a winding up order was repugnant and should not be made. However, in our view, in the early stages of a Chapter 11 proceeding and a liquidation such as exist here, any potential conflict can be managed. For example, as has already happened, the liquidators have been represented in the status conferences in the US Proceeding and they have sought directions from the Court concerning their decisions about participation by the directors in the US Proceeding;

(c)  the Associate Judge was satisfied that Legend's centre of main interests was Australia and not the USA. There is no appeal in respect of that finding;

(d)  the US Proceeding was not recognised as a foreign main proceeding. Therefore, the benefits that flow from such recognition under the Model Law were not available to Legend. Even if the US Proceeding had been determined to be a foreign main proceeding, Art 20(4) of the Model Law contemplates that an application to wind up Legend in Australia could still be made;

(e)  the proceeding was not recognised as a foreign non-main proceeding. Again, there is no appeal from that finding. If recognition had been achieved, then relief may have been available under Art 21 of the Model Law, including staying proceedings and entrusting the administration of the company's assets to the foreign representative;

(f)  Legend's principal place of business is Melbourne and most of its directors and officers are located in Australia;

(g)  leaving to one side the respondents, most of Legend's creditors (both in number and value) are in Australia;

(h)  Legend's major asset is the shares in its Australian subsidiary;

(i)    the application to wind up was filed before Legend filed its bankruptcy petition under Chapter 11. Indeed, Legend's counsel in the USA made it clear that a reason for filing for bankruptcy in the USA was to prevent the winding up. Whilst we accept that a company may take that step in an attempt to secure some breathing space from creditors, where there is no proposed reorganization plan, the potential for such a plan in the future does not provide a sufficient reason for refusing to wind the company up in Australia. Whatever complications flow from the decision to file for USA bankruptcy when it did, Legend has brought them on itself;

(j)    there has been no request from the United States Bankruptcy Court. Whilst a request would seem not to be a prerequisite for the Australian courts acting in aid of or being auxiliary to the United States Bankruptcy Court, in the absence of such a request (particularly in the circumstances of this case where Judge Shannon knew that the winding up proceeding was before the Court), there is an air of unreality in the submission that liquidation in this country is the antithesis of and incompatible with the US Proceeding;

(k)    in the absence of a reorganization plan or proposal, there is nothing to suggest that creditors, or for that matter Legend, would be better off if Legend were not placed into liquidation in Australia;

(l)    if a plan of reorganization or a realistic proposal does eventuate, then it would be open to the liquidators to investigate and pursue that path if that might lead to a better return to creditors;

(m)    how any funds realised by the liquidators are to be distributed and questions of whether the respondents' claims are to be subordinated are all matters that may be dealt with at the time of distribution;

(n)    the Court has power under the *Corporations Act* to respond to relevant developments in the USA. Included in those powers is the power to stay or terminate the winding up on the application of the liquidators,

a creditor or a shareholder.[30]  Additionally, if a creditor is aggrieved by any act, omission or decision of a liquidator, the creditor may appeal to the Court.[31]  There is also power in the Court to inquire into the conduct of liquidators if it appears to the Court that the liquidators are not faithfully performing their duties.[32]

34      It is not uncommon for there to be dual insolvency administrations where international companies are concerned. Chapter V of the Model Law expressly contemplates that situation.  The difficulties that Legend perceives are all matters that may be handled by appropriate court applications.  Whilst it submits that such applications are expensive, take time and lead to inefficiencies so that it becomes unworkable in practice, the nature of an insolvency regime involving a company that is registered in one country but operates in one or more other countries, will of necessity attract a level of complexity that may not arise where only one jurisdiction is involved.  Moreover, these are early days in both the US Proceeding and the liquidation.  Whilst a number of potential issues may be postulated in the early stages, experience tells that they often dissipate with time.

35      In summary, in the particular circumstances of this case, it would not have been a proper grant of assistance, nor in the guise of acting as auxiliary to the United States Bankruptcy Court would it have been proper, to refuse to make the winding up order.  Section 581 did not oblige the Court to exercise the discretion in that way.

*Other issues*

36      Both in the written and oral submissions of the parties to this appeal, considerable time was devoted to an argument about whether Legend's contention as to the correct interpretation of s 581 of the *Corporations Act* meant that that section was inconsistent with the Model Law.  As we do not accept Legend's argument

---

[30]    *Corporations Act* s 482.
[31]    Ibid s 1321(1).
[32]    Ibid s 536(1).

about the proper construction of s 581, the issue does not arise for determination.

37          On the hearing of the appeal, Legend submitted that if the Associate Judge was not obliged to refuse the winding up application then he could have, but did not, adjourn it. It is not surprising that his Honour did not do so as no application for an adjournment was made. When his Honour made the winding up order, Legend did seek a stay, which was refused. In our view, for the reasons that we have given, there was no basis for a stay.

38          As another fall-back position to its construction argument, Legend submitted that, if it was open to the Court to make the winding up order, then both s 581 and common law principles required the Court to ensure that the liquidation in Australia was conducted as an ancillary winding up to the US proceeding. In this regard, Legend contended that the liquidators should have been directed to get in the Australian assets, and remit them to the US proceeding so that there is a distribution of Legend's worldwide assets on a uniform basis. This argument was not put to the Associate Judge. In any event, in our view, such a direction is unnecessary at this time. Apart from the respondents, who are entitled to enforce in Australia the debts owed to them (in excess of $12.35 million), there are 19 known creditors. Of those, 15 are Australian creditors. They are owed about $695,000. The four other creditors are located in the United States. They are owed about $76,000. In due course, s 601CL (15) and (16) of the *Corporations Act* may have a role to play. Those provisions deal with the duties of a liquidator of a registered foreign company in making distributions to creditors. In any event, any distribution to creditors is some time away and it is too early to decide now what should occur once Legend's assets have been realised.

39          As part of its fall-back arguments, Legend submitted that the winding up order should have been made on terms avoiding conflict with the US Proceeding, including a direction to the liquidators to take any step reasonably necessary to facilitate the US Proceeding, including the grant of any approvals required to ensure

that the directors and officers could participate in the US Proceeding and co-operate with the United States Bankruptcy Court. Again, this is unnecessary. There is an application on foot by the liquidators seeking directions as to whether they are justified in refusing to give approval under s 471A(1A)(c) of the *Corporations Act* to Legend's directors and officers for the purpose of allowing them to continue to exercise their powers in that capacity. In parallel with that, Mr Gutnick has applied for the Court's leave pursuant to s 417A(1A)(d) so that Legend's directors and officers may participate in the US Proceeding. The trial division of the Court is able to accommodate the hearing of both applications in the coming days.

*Conclusion*

40        The appeal will be dismissed.



Summary of Judgment

LEGEND INTERNATIONAL HOLDINGS INC (IN LIQ) v INDIAN FARMERS
FERTILISER COOPERATIVE LIMITED

[2016] VSCA 151

30 June 2016

The Court of Appeal today dismissed an appeal by Legend International Holdings Inc from
an order that placed it into liquidation in Australia. The Court granted Mr Joseph Gutnick,
one of Legend's directors, the right to enable the appeal to be brought.

Legend is a corporation registered in Delaware in the United States of America. Its principal
assets are shares in a company in Queensland and its main place of business is Melbourne.

In May 2015, Legend's major creditors, Indian Farmers Fertiliser Cooperative Limited and
Kisan International Trading (the respondents), obtained an arbitral award which entitled
them to be paid $12.35 million plus interest. The respondents applied to the trial division of
the Supreme Court of Victoria for the liquidation of Legend. Legend then filed for
bankruptcy in the United States of America under Chapter 11 of the United States Code.

In the trial division, the Associate Judge found that Legend's main centre of interests was in
Australia, and he made the order to place Legend into liquidation. Legend appealed,
claiming that the Associate Judge had made an error in ordering that Legend be wound up,
given the existence of the US proceeding. Legend argued that an Australian liquidation was
incompatible with the US proceeding, as the goal of the US proceeding was to reorganize the
company so that it may continue, which an Australian liquidation might prevent from
occurring. Legend argued that s 581 of the *Corporations Act*, which states that Australian
courts must 'act in aid of, and be auxiliary to' courts of prescribed countries (which include
the USA), meant that the Court must refuse to place Legend into liquidation.

The Court of Appeal did not accept that s 581 prevented the Court from making an order for
liquidation. The Court has a discretion as to whether to make such an order. The Court said
that very clear words would be required in the legislation to justify a conclusion that an
Australian court could not exercise its discretionary power just because the company had
filed for bankruptcy in the USA. The Court stated that s 581 of the *Corporations Act* requires
the Court to consider what aid it should properly give to the foreign court. In this case that
involved the Court considering whether in all the circumstances (including the existence of
the US proceeding) the Court should refrain from exercising its discretion to place Legend
into liquidation. The Court confirmed that the Associate Judge's decision was not wrong,
noting that the US proceeding was on foot but in its early stages, that Legend had not yet

proposed any plan for reorganization and that the pre-requisites for winding up Legend under the *Corporations Act* were satisfied. Among other things, the Court took into account that Legend's main place of business, its major assets and its major creditors were all located in Australia or entitled to enforce their rights against Legend in Australia. The Court also noted that, should it be necessary, it has the power under the *Corporations Act* to respond to relevant developments in the US proceeding.

**NOTE:** This summary is necessarily incomplete. It is not intended as a substitute for the Court's reasons or to be used in any later consideration of the Court's reasons. The only authoritative pronouncement of the Court's reasons and conclusions is that contained in the published reasons for judgment.